**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 0:26cv61744

GOOD RECEPTION MUSIC, LLC
d/b/a DUPREE,

Plaintiff,

v.

CURB/WORD ENTERTAINMENT,
a Tennessee limited liability company;
JONATHAN MASON, individually;
PROVIDENT LABEL GROUP LLC d/b/a
PROVIDENT ENTERTAINMENT,
a Delaware limited liability company;
MATTHEW WEST, individually;
ANNE WILSON, individually;
STORY HOUSE COLLECTIVE, LLC,
a Tennessee limited liability company;
and JOHN DOES 1–10,

Defendants.

_____/

## COMPLAINT

Plaintiff Good Reception Music, LLC d/b/a DUPREE ("Plaintiff" or "DUPREE"), by and through its undersigned counsel, hereby alleges as follows:

## PARTIES

1.      Plaintiff Good Reception Music, LLC is a Florida limited liability company with its principal place of business in Winter Garden, Florida. Plaintiff does business as DUPREE, a Contemporary Christian Music ("CCM") mother-son duo consisting of Lauren Dupree and her son Dylan Dupree. Plaintiff is the owner of the copyrights in the original sound recordings and musical compositions at issue in this action. The copyrights in the Works were originally registered in the individual names of Lauren Dupree and Dylan Dupree as owners of record. By virtue of a Catalog

1

Copyright Assignment Agreement (the "Assignment"), Lauren Dupree and Dylan Dupree irrevocably assigned all right, title, and interest in and to the Works, including all causes of action for past, present, and future infringement, to Good Reception Music, LLC, which is the present owner of all copyrights asserted herein.

2.      Defendant Curb/Word Entertainment is a Tennessee limited liability company with its principal place of business in Nashville, Tennessee. At all relevant times, Defendant Curb/Word Entertainment employed Jonathan Mason as Vice President of A&R and Publishing for its Christian department and conducted business in this District.

3.      Defendant Jonathan Mason is an individual who, upon information and belief, resides in Tennessee. At all relevant times, Mason served as Vice President of A&R and Publishing for the Christian department at Curb/Word Entertainment and personally participated in the wrongful conduct alleged herein.

4.      Defendant Provident Label Group LLC d/b/a Provident Entertainment is a Delaware limited liability company with its principal place of business in Nashville, Tennessee. It is a division of Sony Music Entertainment and conducts business in this District. Provident released infringing works and its executives accessed Plaintiff's PlayMPE distributions.

5.      Defendant Matthew West is an individual who, upon information and belief, resides in Tennessee. West is a recording artist signed to Provident Label Group and is affiliated with Story House Collective management. He released an infringing work titled "Jesus Is King" and engaged in related promotional conduct.

6.      Defendant Anne Wilson is an individual who, upon information and belief, resides in Tennessee. Wilson is a recording artist signed to Capitol Christian & Gospel and is represented

2

by Story House Collective. She released and promoted an infringing work substantially similar to Plaintiff's copyrighted composition "He Tells Me (Who I Am)."

7. Defendant Story House Collective, LLC is a Tennessee limited liability company with its principal place of business in Tennessee. It serves as the management company for Matthew West and Anne Wilson and is involved in the promotion and exploitation of the infringing works.

8. Defendants John Does 1–10 are individuals or entities whose identities are currently unknown to Plaintiff but who, upon information and belief, participated in the wrongful conduct alleged herein, including but not limited to songwriters, producers, A&R executives, and label personnel who accessed Plaintiff's works and facilitated the creation and distribution of infringing derivative works. Plaintiff will amend this Complaint to name these Defendants when their identities are ascertained.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act of 1976, 17 U.S.C. § 101 et seq. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1400(a) because a substantial part of the events or omissions giving rise to the claims occurred in this District, Plaintiff resides in this District, Plaintiff's business operations and commercial interests are centered in this District, and harm to Plaintiff's rights and business was suffered in this District.

## FACTUAL BACKGROUND

**Plaintiff's Success and the 2019 Access Event**

11.     Plaintiff DUPREE is an independent CCM mother-son duo that has built a substantial international following through original songwriting, virtuoso left-handed guitar performance by Dylan Dupree, and sophisticated vocal arrangements. Plaintiff has achieved verified commercial success, including multiple Top 30 placements on the TCM Australia Christian Radio charts, with the song "He Tells Me (Who I Am)" peaking at #9 and remaining on the chart for 24 consecutive weeks. Plaintiff's catalog has generated over 29,000 radio spins worldwide and substantial streaming activity. Plaintiff's commercial viability is further confirmed by over 4,200 Shazam identifications on its catalog, which is a metric reflecting listeners actively taking the time to identify and seek out Plaintiff's recordings.

12.     In or around September 2019, at the Experience Conference, Plaintiff submitted the recording of its fully produced demo track "Never Forget" in a songwriting session, which was played by Mike Murray on the speaker system for the panel and songwriting session attendees. The panel included Defendant Jonathan Mason (then VP of A&R at Curb/Word Entertainment), Mike Murray (then Senior Creative Director / Music Publishing at Integrity Music), and songwriter Meredith Andrews. Notably, while the guitar solo portion of the track was playing, Mike Murray picked up the microphone and announced to the attendees, "Ladies and Gentlemen, Lincoln Brewster," which was a reference to the well-known CCM artist and electric guitarist then signed to Integrity Music, signaling recognition of the virtuosity and commercial caliber of the performance. The submission received positive feedback, and Plaintiff was selected for the talent showcase.

13.     Following the conference, Mike Murray referred Plaintiff to industry marketer Wisdom Moon for artist development and marketing services. Wisdom Moon subsequently

referred Plaintiff to Defendant Jonathan Mason. On November 19, 2019, Plaintiff met with Mason in his VP office at Curb/Word Entertainment's headquarters on Music Row in Nashville, Tennessee. Mason submitted an invoice for paid A&R consulting services, and on December 17, 2019, while Mason was employed as VP of A&R and Publishing for the Christian department at Curb/Word Entertainment, Plaintiff paid Mason $1,000.00 for one month of consulting services.

14.     During the paid consulting engagement, Plaintiff provided Mason with exclusive, direct access to multiple unreleased, fully produced original compositions, including but not limited to "Perfect Love," "Never Forget," "Stronger Together," "Up Again," and "Reflections." The version of "Stronger Together" provided to Mason during the consulting engagement was the fully produced sound recording bearing a copyright date of October 2019, predating the completed For King & Country release. Following Mason's A&R feedback on the track, Plaintiff created a revised sound recording titled "Stronger Together (New Version)" in January 2020. These works were protected by federal copyright registrations or deposits predating any subsequent commercial releases by Defendants or their affiliates.

15.     Rather than advancing Plaintiff toward legitimate label or management opportunities, Mason and the network of industry participants with whom he collaborated engaged in a coordinated course of conduct that systematically blocked Plaintiff's domestic market entry while simultaneously harvesting Plaintiff's creative concepts, phrases, themes, arrangements, and, in multiple instances, substantially similar lyrics and structures for the benefit of major-label artists within their professional circles.

**The Pattern of Exploitation and Access Through PlayMPE**

16.     Beginning in or around late 2019 and continuing through 2026, Plaintiff has distributed more than twenty-two (22) original recordings via the industry-standard PlayMPE platform, which provides digital distribution and telemetry tracking to radio programmers, label

5

executives, and other industry professionals. Plaintiff's PlayMPE distributions have generated substantial engagement, including thousands of opens and a substantial number of downloads, with average opens of approximately 2,000 per release and downloads ranging from 80 to 120 per release, figures considered commercially viable within the industry and demonstrating significant commercial potential.

17.    A clear and documented pattern has emerged in which Plaintiff's original, uncommon phrases, unique thematic concepts, song structures, and in several instances near-identical lyrics and arrangements have appeared in commercial releases by artists associated with Defendants' professional network approximately nine (9) weeks after Plaintiff distributed songs via PlayMPE. Mason's direct access to multiple unreleased compositions through the paid consulting engagement, which began in November 2019, predated the PlayMPE pattern by several months, establishing an earlier and independent layer of access. This pattern has occurred across at least thirteen (13) original compositions in Plaintiff's catalog for which federal copyright registrations have been obtained or timely deposits made.

18.    PlayMPE telemetry logs reveal highly irregular and targeted access to Plaintiff's distributions by executives affiliated with Defendants. Personnel from Provident Label Group, Capitol Christian & Gospel, and even PlayMPE's own Chief Financial Officer accessed Plaintiff's distributions during late-night and early-morning hours. Personnel from Curb/Word Entertainment accessed Plaintiff's distributions during late morning hours. These access patterns consistently precede the release of infringing works by days or weeks.

**Representative Infringements**

*The "Jesus Is King" Cluster (2026)*

19.    On or about February 5, 2026, Plaintiff distributed its original composition "Jesus Is King" via PlayMPE. The track was released commercially on February 13, 2026, and quickly

6

peaked at #2 on the PlayMPE charts. Plaintiff's marketing campaign positioned the song as the "First Voice of the Jesus Is King movement," with a distinctive email blast on April 14, 2026.

20.     On April 17, 2026, precisely nine weeks after Plaintiff's PlayMPE distribution and three days after Plaintiff's "First Voice" email blast, Defendant Matthew West (on Provident Label Group) and Blanca (on Curb/Word Entertainment) simultaneously released distinct tracks both titled "Jesus Is King." These releases featured promotional language, cover art motifs (including flags in similar colors and fonts), and thematic content that directly mirrored Plaintiff's marketing and creative expression.

21.     PlayMPE telemetry logs document extensive and irregular access to Plaintiff's "Jesus Is King" distribution in the days immediately preceding the April 17 releases. Executives including Charles Van Dyke (VP, Provident) and Kenny Rodgers (Capitol Christian) accessed the files during late-night and early-morning hours. Personnel from Curb/Word Entertainment also accessed the distribution during this period. Plaintiff's ongoing monitoring of the PlayMPE charts throughout the relevant period revealed no chart activity for either West's or Blanca's versions of "Jesus Is King," a strong indicator that those releases were not submitted to PlayMPE.

22.     On May 20, 2026, the same day Plaintiff's demand letter was transmitted, Defendant Anne Wilson posted on social media a demo of an unreleased song titled "Who I Am To You."



The chorus of Wilson's demo contains near-verbatim lyrical similarities to Plaintiff's 2022 copyrighted composition "He Tells Me (Who I Am)," including the phrase "Tell Me Who I Am," which is a variation of Plaintiff's "Tells Me Who I Am" with only the final "s" removed as well as "Is who I am" and "Who I'm gonna be" / "Who I've been." On or about that same date, both Defendant Matthew West and Defendant Anne Wilson each posted content referencing "the enemy" in the context of their respective releases, language that closely mirrors thematic content in Plaintiff's catalog. Wilson is signed to Capitol Christian & Gospel and represented by Story House Collective, the management company affiliated with Matthew West.

***Additional Pattern Works***

23.     The pattern extends to numerous other compositions. By way of example only: Plaintiff's "Perfect Love" (copyrighted 2019) was accessed by Adrian Thompson (then A&R at Integrity) during the paid consulting period; shortly thereafter, Lincoln Brewster released a song titled "Perfect Love" with substantially similar thematic and lyrical elements. Plaintiff's "Stronger Together" was accessed by Mason during the paid consulting engagement; For King & Country subsequently released "Together" with similar lyrical themes and structure. Although Mason has acknowledged that For King & Country is not on his roster, stating in a recorded interview, "I'll

clarify, they work with my co-worker on the other side of the wall, so they're not on my roster," Mason occupies an office in horizontal proximity to the A&R team responsible for that act at Curb/Word Entertainment. For King & Country has publicly stated in a video interview that "Together" involved more collaborators and a longer creative process than any song they had previously written, taking approximately two years to complete. Mason had Plaintiff's "Stronger Together" in his possession for several months before "Together" was completed and released.

24.     Plaintiff holds U.S. Copyright registrations or has made timely deposits for the infringed works, including but not limited to Registration Nos. SRu 1-494-945 ("He Can Do Anything") attached herewith as **Exhibit A**, SRu 1-532-249 ("Meet Me On The Mountain") attached herewith as **Exhibit B**, SRu 1-582-949 ("Walk Me Home") attached herewith as **Exhibit C**, SRu 1-507-779 ("He Tells Me (Who I Am)") attached herewith as **Exhibit D**, and SRu 1-640-040 ("Jesus Is King") attached herewith as **Exhibit E**. Plaintiff's copyrights are valid, subsisting, and enforceable. The copyright registrations attached herewith as Exhibits A through E reflect Lauren Dupree and Dylan Dupree as the registered owners of record, as the Works were originally registered in their individual names prior to the formation of Good Reception Music, LLC. Plaintiff's ownership of all such copyrights was perfected and confirmed by the Assignment, pursuant to which Lauren Dupree and Dylan Dupree conveyed all rights to Good Reception Music, LLC, including expressly the right to pursue and retain damages for infringement that occurred prior to the effective date of the Assignment. Plaintiff does not attach the Assignment as an exhibit to this Complaint but will produce it in discovery or upon the Court's request, and hereby affirms its existence and validity in support of Plaintiff's standing.

**Domestic Exclusion and International Success**

25.     Despite Plaintiff's documented international commercial success and positive evaluations from booking agents and radio programmers, Plaintiff has been systematically

9

excluded from domestic label deals and management representation. High-profile booking agent Jeff Roberts evaluated Plaintiff's music and directed Plaintiff to contact CCM labels in Nashville, specifically advising Plaintiff to leverage its Australian chart success as a potential entry point to secure label interest, but those channels were blocked. Defendant Mason dismissed Plaintiff's Australian chart success as "not apples to apples" with the U.S. market while simultaneously facilitating the exploitation of Plaintiff's concepts by domestic major-label artists.

26.     Defendant Mason has been recorded stating that he evaluates artists' "heart over art" and looks for "red flags" to determine whom to sign or block. This gatekeeping authority was exercised to Plaintiff's detriment while Plaintiff's creative assets were extracted for the benefit of others in Mason's professional circle.

**<u>The May 20, 2026 Demand Letter and Continued Infringement</u>**

27.     On May 20, 2026, Plaintiff, through undersigned counsel, transmitted a detailed demand letter to Curb/Word Entertainment and Jonathan Mason setting forth the facts of access, the pattern of infringement, and the specific violations of Plaintiff's rights. *See* **Exhibit F**. The letter demanded cessation of infringing activities, an accounting, and compensation to resolve the claims. The twenty-one (21) day response period has expired with no communication from any Defendant or their counsel. On May 21, 2026, Plaintiff, through undersigned counsel, followed up with a supplemental demand letter. *See* **Exhibit G**.

28.     Defendants' failure to respond, combined with the continued distribution and exploitation of the infringing works and the timing of Anne Wilson's May 20, 2026 demo release, demonstrates that Defendants have chosen to continue their wrongful conduct rather than engage in good-faith resolution. The infringement is ongoing and willful.

29.     Subsequent to the transmission of the demand letters, a series of additional developments confirm the willful and continuing nature of Defendants' conduct. On or about June

10

1, 2026, Cochren & Co., a Gotee Records artist within the CCM network, publicly announced the addition of a guitar solo to one of his songs, engaging a renowned professional guitarist with credits including performances with Michael Jackson, which was a notable departure from standard CCM production practices that mirrors the very element Plaintiff had publicly identified as a distinctive hallmark of its "Jesus Is King" release through social media.

30.     On or about June 15, 2026, recording artist Forrest Frank, whose catalog includes works identified by Plaintiff as incorporating thematic and lyrical elements drawn from Plaintiff's compositions, publicly revealed a preview of an unreleased song on Instagram under the title "TRUTH WILL SET YOU FREE" (without the definite article "the"). On June 19, 2026, Frank officially released the song commercially on major streaming platforms, including Spotify, under the title "THE TRUTH WILL SET YOU FREE," which is the exact and complete lyric as it appears in Plaintiff's copyrighted composition "He Can Do Anything" (Registration No. SRu 1-494-945). The commercially released title is thus taken verbatim from Plaintiff's original creative expression. The publicly released excerpt of Frank's track includes the lyric "the truth will set you free" as performed, confirming the direct lyrical connection to Plaintiff's work. The discrepancy between the June 15 Instagram preview title (which omitted "the") and the official June 19 commercial release title (which restored "the" to match the verbatim lyric) is consistent with a post-announcement revision and does not diminish the connection to Plaintiff's work; in fact, the finalized commercial title is a more precise reproduction of Plaintiff's original expression.

31.     On or about June 16, 2026, Defendant Matthew West announced that "Jesus Is King" is a "movement" and commenced selling branded merchandise, including flags bearing branding, colors, and thematic elements similar to those employed in Plaintiff's "Jesus Is King" campaign. This announcement directly echoes the language Plaintiff employed in its April 14,

2026 PlayMPE email blast, in which Plaintiff positioned DUPREE as "The First Voice of the 'Jesus Is King Movement.'" West's continued exploitation of the "Jesus Is King" brand in the wake of Plaintiff's demand letter demonstrates willful and ongoing infringement.

**COUNT I – COPYRIGHT INFRINGEMENT**
**(17 U.S.C. § 501 – Against All Defendants)**

32.     Plaintiff realleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

33.     Plaintiff is the owner of valid and subsisting copyrights in the original musical compositions and sound recordings at issue, including but not limited to "Jesus Is King," "He Tells Me (Who I Am)," "Perfect Love," "Stronger Together," "He Can Do Anything," and numerous other original works. As alleged in paragraph 1 and paragraph 24, Plaintiff acquired ownership of these works pursuant to the Assignment dated June 17, 2026, and possesses full standing to assert all claims for past, present, and future infringement. Plaintiff has obtained or applied for U.S. Copyright registrations for these works, and the copyrights are valid, subsisting, and enforceable.

34.     Defendants, without authorization from Plaintiff, have reproduced, distributed, publicly performed, and created derivative works based upon Plaintiff's copyrighted compositions, including the works titled "Jesus Is King" (Matthew West and Blanca), "Who I Am To You" (Anne Wilson), "Perfect Love" (Lincoln Brewster), "Together" (For King & Country), "THE TRUTH WILL SET YOU FREE" (Forrest Frank), and other substantially similar works.

35.     Defendants had access to Plaintiff's copyrighted works through multiple channels, including: (a) direct submission to Defendant Mason during the paid 2019 consulting engagement; (b) PlayMPE distributions monitored and accessed by Defendants' executives and personnel; and (c) the network of songwriters, producers, and A&R personnel who received or accessed Plaintiff's material.

12

36.     The works released and promoted by Defendants are substantially similar to Plaintiff's copyrighted compositions in protectable original expression, including but not limited to lyrics, thematic development, song structure, phrasing, and overall concept. The similarities are not merely ideas or scènes à faire common to the CCM genre but extend to original, creative expression unique to Plaintiff's works.

37.     Defendants' infringement has been and continues to be willful. Defendants had actual knowledge of Plaintiff's copyrights through direct access, PlayMPE telemetry, and industry awareness. The timing of the infringing releases and the coordinated promotional conduct demonstrate deliberate copying and exploitation rather than independent creation.

38.     As a direct and proximate result of Defendants' infringement, Plaintiff has suffered and will continue to suffer irreparable harm to its copyrights, commercial interests, reputation, and goodwill, for which there is no adequate remedy at law. Plaintiff is entitled to injunctive relief, actual damages and Defendants' profits attributable to the infringement, or statutory damages up to $150,000 per infringed work, and recovery of its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505.

### COUNT II – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS
**(Florida Common Law – Against Defendants Curb/Word Entertainment, Jonathan Mason, and Story House Collective)**

39.     Plaintiff realleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

40.     Plaintiff had existing and prospective business relationships with record labels, management companies, booking agents, and other industry participants with whom Plaintiff sought to develop commercial opportunities, including but not limited to the labels identified in Plaintiff's conflict checks and the booking agent Jeff Roberts who evaluated Plaintiff's music.

41.     Defendants Curb/Word Entertainment, Jonathan Mason, and Story House Collective had actual knowledge of Plaintiff's prospective economic relations and Plaintiff's efforts to secure domestic label and management deals.

42.     Defendants intentionally and unjustifiably interfered with Plaintiff's prospective economic relations by, among other things: (a) systematically blocking Plaintiff's access to domestic label and management opportunities while simultaneously harvesting Plaintiff's creative assets; (b) using the confidential paid consulting arrangement with Mason, while Mason was employed by Curb/Word Entertainment, as a mechanism to obtain early access to Plaintiff's unreleased catalog; (c) engaging in a pattern of idea and expression theft that undermined Plaintiff's commercial value; and (d) exercising gatekeeping authority to exclude Plaintiff from the very market in which Plaintiff's concepts were being exploited by Defendants' affiliates.

43.     Defendants' interference was accomplished through improper means, including but not limited to breach of the duties of loyalty and good faith owed by Mason to his employer, use of confidential information obtained through the paid consulting arrangement for personal and corporate advantage, and coordinated exploitation of Plaintiff's intellectual property without compensation or credit.

44.     As a direct and proximate result of Defendants' tortious interference, Plaintiff has suffered and will continue to suffer substantial economic damages, including lost label and management opportunities, diminished commercial value of its catalog, and harm to its reputation and goodwill in the CCM industry.

45.     Defendants' conduct was willful, malicious, and in reckless disregard of Plaintiff's rights, warranting the imposition of punitive damages under Florida law.

## **PRAYER FOR RELIEF**

14

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants, and award the following relief:

A.      A temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them from further infringing Plaintiff's copyrights, including but not limited to reproducing, distributing, publicly performing, or creating derivative works based upon Plaintiff's copyrighted compositions, and from further interfering with Plaintiff's prospective economic relations;

B.      An order requiring Defendants to impound and destroy all copies of the infringing works and all materials used to produce them;

C.      Actual damages sustained by Plaintiff and all profits of Defendants attributable to the infringement, or, at Plaintiff's election, statutory damages in the maximum amount permitted by law for each infringed work, pursuant to 17 U.S.C. § 504;

D.      Punitive damages in an amount to be determined at trial for Defendants' willful, malicious, and oppressive conduct;

E.      Plaintiff's reasonable attorneys' fees and costs incurred in this action pursuant to 17 U.S.C. § 505 and other applicable law;

F.      Pre-judgment and post-judgment interest at the maximum rate permitted by law; and

G.      Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 19, 2026

Respectfully submitted,

HEITNER LEGAL, P.L.L.C.
*Attorney for Plaintiff*
2300 Delmar Pl.
Fort Lauderdale, Florida 33301
Phone: 954-558-6999
Fax: 954-927-3333

By:    */s/ Darren A. Heitner*
Darren A. Heitner
Florida Bar No.: 85956
Darren@HeitnerLegal.com

*/s/ Alan Mensa-Wilmot*
Alan Mensa-Wilmot
Florida Bar No.: 117840
Alan@HeitnerLegal.com